HOLTON & HUNKEL GREENHOUSE COMPANY, Respondent,
vs. THE STATE, Appellant.

*December 3, 1956—January 7, 1957.*

338

For the appellant there were briefs by the *Attorney General* and *Stewart G. Honeck,* deputy attorney general, and *Robert J. Vergeront,* assistant attorney general, attorneys, and *Martin J. Werra* of Madison of counsel, and oral argument by *Mr. Vergeront* and *Mr. Werra.*

For the respondent there was a brief by *Shea & Hoyt,* attorneys, and *Hamilton T. Hoyt* of counsel, all of Milwaukee, and oral argument by *Hamilton T. Hoyt.*

CURRIE, J. Sec. 85.01 (4) (cm), Stats. 1953, provides lower license fees for registering "farm trucks" than are required of commercial trucks. Sec. 85.10 (5a) defines a "farm truck" as follows:

"Every motor truck owned and operated by a farmer and used primarily for the transportation of supplies, farm equipment, and products on the licensee's farm or between his farms, the transportation of farm products from the licensee's farm to market, and the transportation of supplies to his farm."

There can be no question but under the evidence presented that the one truck listed as being operated by the farm division of plaintiff's business is entitled to be registered under the "farm truck" rates prescribed by sec. 85.01 (4) (cm), Stats. 1953. While there was some interchange of trucks between the three divisions, the trucks listed to each division were used primarily in carrying on the operations of such division.

The principal issue before us on this appeal is whether the remaining trucks used to carry on the operations of the nurseries and greenhouse divisions were entitled to be licensed as "farm trucks" in 1954.

Ch. 85, Stats. 1953, contains no definition of "farm" or "farming." When we look to definitions of such terms in other statutes not dealing with the licensing of motor vehicles,

we find that the legislature has not followed a consistent pattern.

For the purposes of the Workmen's Compensation Act, sec. 102.04 (4), Stats. 1953, defines farming as follows:

"As used in this chapter 'farming' means the operation of farm premises owned or rented by the operator. 'Farm premises' means areas used for operations herein set forth, *but shall not include other areas, greenhouses, or other similar structures unless used principally for the production of food and farm plants.* 'Farmer' means any person, firm, and private corporation engaged in farming as defined. Operation of farm premises shall be deemed to be the planting and cultivating of the soil thereof; the raising and harvesting of agricultural, horticultural, or arboricultural crops thereon; . . ." (Italics supplied.)

On the other hand, for the purposes of unemployment compensation, sec. 108.02 (23) (e), Stats. 1953, the term "farm" is defined as follows:

"As used in this subsection, the term 'farm' includes stock, dairy, poultry, fruit, fur-bearing animal, and truck farms, plantations, ranches, *nurseries,* ranges, *greenhouses,* or other similar structures used primarily for the raising of agricultural or horticultural commodities, and orchards." (Italics supplied.)

Ch. 93, Stats. 1953, describes the powers, duties, and functions of the state department of agriculture. A reading of this statute discloses that the activities of such department are intended to extend into fields beyond that which is ordinarily understood to be farming. For example, sec. 93.07 (4), Stats. 1953, provides for state aid to the Wisconsin Horticulture Society, an organization which, among other things, renders service to home gardeners growing flowers for pleasure and not for profit. Likewise, the department's inspection duties with respect to plant diseases is not limited to plants grown commercially. This being the case, it is only

natural that in defining "farm products" ch. 85, Stats. 1953, would use the widest possible definition to be consistent with the widespread functions of the department of agriculture. Such definition is set forth in sec. 93.01 (10), Stats. 1953, and reads as follows:

" 'Farm products' includes all products of agriculture, horticulture, dairying, livestock, poultry, and bee raising."

In view of widespread planting of trees by farmers under the state's reforestation program, and the sale by farmers of wood and timber from farm wood lots, we deem that trees are *"farm plants"* within the definition of "farming" quoted above from sec. 102.04 (4), Stats. 1953. This being so, the legislature seems to have consistently provided that the operation of nurseries which grow trees to be embraced within the term "farming." We, therefore, can perceive no persuasive reason why the conducting of a nursery should not be embraced within the term "farm" as employed in secs. 85.01 (4) (cm) and 85.10 (5a), Stats. 1953, and we so hold.

When we come to the consideration of greenhouses, we find no such consistent pattern on the part of the legislature. Under the definition of "farming" contained in sec. 102.04 (4), Stats. 1953, plaintiff's greenhouse operations would be expressly excluded. This is because greenhouses and other areas devoted to growing plants other than *"farm plants"* are expressly excluded. The words "farm plants" obviously refer to such plants as tobacco, cabbage, tomato, etc., of a category grown commercially on farms. On the other hand, the definition of "farm" in sec. 108.02 (23) (e), Stats. 1953, expressly includes greenhouses.

In *Eberlein v. Industrial Comm.* (1941), 237 Wis. 555, 297 N. W. 429, this court had before it the question of whether employees of the plaintiff employers engaged in growing ginseng were covered under the Workmen's Compensation Act. Sec. 102.04 (2), Stats. 1937, excluded from

coverage *"farm labor."* Mr. Justice WICKHEM, speaking for the court, therein declared (pp. 557, 559):

"The question upon this appeal is whether ginseng raising is farming. Ginseng is raised under sheds, it being necessary to have plenty of shade in order to grow the plant. Beds are then made and elevated about eight inches from the ground, lined with boards and planks to make them about six feet wide and 100 long. The seed is placed in these beds and takes some eighteen months to germinate. The small plants are allowed to stand for two years and then are transplanted. They must grow for five or ten years longer before a marketable crop can be harvested. The garden is hand-worked in much the same way as a hothouse. A relatively large amount of labor is required as compared to ordinary farm work—at least four workmen to the acre. . . .

*"In such a case the analogy to the operation of a hothouse is very close.* Such activities are not farming as that term is commonly understood and as the legislature must have understood it when the act was drafted." (Emphasis supplied.)

The American College Dictionary and Webster's New International Dictionary define a "hothouse" as "an artificially heated glasshouse for the cultivation of tender plants." Plaintiff's brief characterizes the reference by this court to hothouses in the *Eberlein Case* as dicta and points out that some courts of other jurisdictions have reached an opposite conclusion. However, we consider that the lath houses or sheds under which ginseng is grown bear a fairly close analogy to greenhouses. We, therefore, perceive no sound reason for departing from what was said on the subject of hothouses by Mr. Justice WICKHEM in the *Eberlein Case*. We cannot believe the legislature ever intended to include the extensive commercial greenhouse and delivery operations of plaintiff's greenhouse division as "farm" operations so as to authorize the registering of its trucks as "farm trucks" at reduced license fees.

The 1955 legislature amended sec. 85.10 (5a), Stats., so as to add thereto the following sentence:

"As used in this subsection, the term 'farmer' shall include persons who are engaged in those activities specified in the definition of 'operation of farm premises' contained in s. 102.04 (4), provided that such activities are directly or indirectly for the purpose of producing a commodity or commodities for market, or as an accessory to such production."

Inasmuch as sec. 102.04 (4), Stats. 1955, expressly excludes greenhouses and other areas not "used principally for the production of food and farm plants" from "farm premises," the 1955 amendment makes it clear that plaintiff's trucks used primarily in the operation of its greenhouse division are not entitled to be registered as "farm trucks." Although such amendment has no retroactive effect it is interesting to note that it has enacted the same result that this court has herein reached by the interpretation we have placed upon sec. 85.10 (5a), Stats. 1953.

It is our conclusion that except for the truck used primarily in the farm-division operations, and the two trucks employed primarily in conducting the nurseries division, the remainder of plaintiff's trucks and the tractor-trailer unit were properly required to be registered under the license fees applicable to commercial trucks. This means that the plaintiff will be entitled to a refund for the difference between the 1954 license fees paid on the three trucks used primarily in the farm and nurseries operations, and the amount of the fees due on the basis of classifying such three vehicles as "farm trucks."

It is contended by plaintiff's counsel that there has been twenty-two years of administrative interpretation by state agencies that all of plaintiff's trucks, including those listed to the Greenhouse Division, were "farm trucks" for the purpose of the motor-vehicle licensing statutes with the single exception of the tractor-trailer unit. It may be conceded that "farm truck" is an ambiguous term in the absence of a statutory definition thereof. Nevertheless, the record does not

disclose any decision having been made at the policy-making level of the motor vehicle department that trucks used primarily in operating a greenhouse business constitute "farm trucks." This fact easily distinguishes the instant case from *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 326, 64 N. W. (2d) 866, where the administrative interpretation accorded weight by this court was embraced in decisions of the Wisconsin employment relations board itself. The fact that over the years subordinates in the motor vehicle department failed to question plaintiff's assertions, which were made in its written applications for truck licenses that its trucks were *"farm trucks,"* is not the type of administrative interpretation to which this court is inclined to give much weight.

Plaintiff's counsel concede that it was error to include interest in the judgment against the state but contend that it was proper to tax costs and disbursements. Neither costs nor interest may be recovered against the state unless expressly authorized by statute. *Frederick v. State* (1929), 198 Wis. 399, 224 N. W. 110. The instant action was instituted pursuant to sec. 85.95, Stats. 1953, which provides that suits thereunder "shall be commenced as provided in s. 285.01, Stats." Sec. 285.01 is part of ch. 285, Stats., and deals with actions generally against the state on claims disallowed by the legislature. It provides the manner of service upon the state and requires the filing with the clerk of court of a bond for costs. The next-ensuing section is sec. 285.04 entitled "Judgment, how paid," and reads as follows:

"No execution shall issue against the state on any judgment, but whenever a final judgment against the state shall have been obtained in any such action the clerk shall make and furnish to the director of budget and accounts a duly certified transcript of such judgment; and the director of budget and accounts shall thereupon audit *the amount of damages and costs therein awarded,* and the same shall be paid out of the state treasury." (Italics supplied.)

346

We approve of the holding of the learned trial court that costs are recoverable herein by the plaintiff, if successful in obtaining judgment against the state, because the provisions of sec. 285.04, Stats., are applicable to such a judgment. The words *"in any such action"* of such latter statute refer to any action commenced under sec. 285.01, and this includes actions instituted pursuant to sec. 85.95 which are required to be begun as provided in sec. 285.01.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

STEINLE, J., took no part.