Frankenthal and another, Respondents, vs. Wisconsin Real Estate Brokers' Board, Appellant.*

*February 3—February 28, 1958.*

* Motion for rehearing denied, without costs, on May 6, 1958.

250

For the appellant there was a brief by the *Attorney General* and *Roy G. Tulane,* assistant attorney general, and oral argument by *Mr. Tulane.*

For the respondents there was a brief and oral argument by *Bernard Berk* of Green Bay.

CURRIE, J.   The issues confronting us on this appeal are as follows:

(1) Did the attacked action of the board constitute the making of a rule within the meaning of sec. 227.014, Stats., so as to be reviewable by an action for declaratory judgment as provided by sec. 227.05?

(2) Is such board action invalid as being an unauthorized interpretation of ch. 136, Stats., governing the licensing of real-estate brokers?

(3) May costs be taxed against a state agency such as the instant board?

The attorney general contends that the refusal of a license to the partnership constituted an agency determination which is only reviewable under sec. 227.15, Stats., in the manner

specified by sec. 227.16, and not by an action for declaratory relief under sec. 227.05. We deem that the cases of *Wisconsin Telephone Co. v. Wisconsin E. R. Board* (1948), 253 Wis. 584, 34 N. W. (2d) 844, and *Kubista v. State Annuity and Inv. Board* (1950), 257 Wis. 359, 43 N. W. (2d) 470, decide the issue contra to such contention of the attorney general.

The *Wisconsin Telephone Co. Case* held that it was the legislative intent that administrative agency decisions which are reviewable under sec. 227.15, Stats., be final orders entered at the end of *contested proceedings* which are based on *findings of fact* required under sec. 227.13. In the instant case there was no *contested proceeding* in which the plaintiffs were accorded a hearing, and no findings of fact whatever were attempted to be entered.

In *Kubista v. State Annuity and Inv. Board, supra,* a state employee requested the defendant board to change the plan of payment of an annuity. The applicant was advised by letter that the request came too late to effect a change. It was conceded that the action of the agency did not constitute a "decision" within the meaning of sec. 227.15, Stats., under the rule of the *Wisconsin Telephone Co. Case.* While the opinion of this court did not expressly so hold, it did so by implication. This is because the opinion assumed that a *"rule"* and not a *"decision"* of the agency was involved, and held that the complaint was sufficient to spell out a cause of action for declaratory relief. The facts in the *Kubista Case* parallel those of the instant appeal because the only ruling of the agency consisted of the board's letter of December 4, 1956, returning the partnership's application for license.

We have no hesitancy in holding that the issuance by the board in 1956 of the mimeographed instructions for renewal of real-estate broker's licenses, which contained the requirement that all members of a partnership must be licensed as a condition to licensing the partnership, constituted the making of a rule reviewable by the declaratory-relief procedure

set forth in sec. 227.05, Stats. The facts that no hearing was held before adoption, if such hearing was required, and that such rule was not filed and published as prescribed by ch. 227, Stats., are wholly immaterial on the issue of whether the same was so reviewable.

We now turn to the merits of the controversy, viz., whether the rule, that required inactive partners to be licensed as a condition to licensing the partnership, is valid.

Wisconsin enacted its first act for the licensing of real-estate brokers in 1919. Ch. 656, Laws of 1919. This act was thereafter extensively amended and revamped by the legislature enacting ch. 231, Laws of 1929, and now comprises ch. 136, Wis. Stats. Sec. 136.07 (2) has since 1929, read as follows:

"If the licensee is a corporation, the license issued to it entitles the president thereof or such other officer as may be designated by such corporation to act as a broker. For each other officer who desires to act as a broker in behalf of such corporation, an additional license shall be obtained, the annual fee for which shall be $1 for a real-estate broker's license and $10 for a business-opportunity broker's license. No license as a real-estate or business-opportunity salesman shall be issued to any officer of a corporation or member of a partnership to which a license was issued as a broker. If the licensee is a partnership, the license issued to it entitles one member to act as a broker, and *for each other member who desires to act as a broker* an additional license shall be obtained, the annual fee for which shall be $1 for a real-estate broker's license and $10 for a business-opportunity broker's license." (Italics supplied.)

The italicized words in the above-quoted statute, standing alone, seem to make it abundantly clear that only those members of a partnership who desire to act in the capacity of a broker are required to be licensed. However, the attorney general points to an apparently inconsistent provision contained in sec. 136.05 (1) (e), Stats. Such subsection relates

to the required contents of the application for license, and reads as follows:

"Such further information as the board may reasonably require to enable it to determine the trustworthiness and competency of each applicant, including each member of the partnership, or each officer of the corporation, to transact the business of a real-estate or business-opportunity broker or salesman in such manner as to safeguard the interests of the public."

It would seem to serve a useless purpose to require such information respecting the competency of an inactive partner, such as Ella Frankenthal, to transact the business of a real-estate broker, if there is no requirement imposed by ch. 136, Stats., that such an inactive partner be licensed. Sec. 136.05 (1) (e), Stats., remained unchanged as a result of the 1929 revision, and as enacted by the 1919 legislature such subsection was numbered sec. 1636–225 (11) (e). On the other hand, the provisions of present sec. 136.07 (2) were inserted into the licensing act as a result of such 1929 revision.

Viewing the issue of statutory interpretation most favorably from the standpoint of the board, we can come to no other conclusion than that an ambiguity exists as to whether an inactive partner is required to be licensed as a condition to licensing the partnership. This is exactly the situation where practical interpretation over a long period by the agency charged with administering an act or statute should be deemed controlling. For nearly twenty-seven years the board interpreted ch. 136, Stats., as not requiring that each inactive partner of a licensed partnership be licensed. During all of such period the legislature apparently acquiesced in such practical interpretation by the agency, and made no change in the wording of sec. 136.07 (2), Stats. We adopt such practical interpretation upon the authority of *Dunphy Boat Corp. v. Wisconsin E. R. Board* (1954), 267 Wis. 316, 326, 64 N. W. (2d) 866, and the other cases cited therein.

The attorney general further cites the provisions of secs. 136.01 (2) (b), 136.10, and 136.11, Stats., as being pertinent on this issue of statutory interpretation. We find no merit to such contention.

Under the provisions of sec. 123.21, Stats., Ella Frankenthal possesses no separately assignable interest in the partnership real estate. Because she has no right to participate in the management, partnership real estate may be sold without her joining in the conveyance. Secs. 123.06 (1) and 123.07. Furthermore, her interest in the partnership is not an interest in real estate but is personal property. Sec. 123.22. Sec. 136.01 (2) (b), which defines a person engaged in the business of selling real estate owned by him to be a broker, has no application to Ella Frankenthal.

Sec. 136.10, Stats., prohibits a licensed broker from splitting commissions with a nonlicensed person "for performing any acts specified" in ch. 136, Stats. Ella Frankenthal, as an inactive partner, performed none of the acts specified in ch. 136.

Sec. 136.11, Stats., provides as follows:

"No person *engaged in the business or acting in the capacity of a real-estate or business-opportunity broker or salesman within this state* shall bring or maintain an action in the courts of this state for the collection of a commission or compensation for the performance of any act mentioned in this chapter without alleging and proving that he was a duly licensed broker or salesman at the time the alleged cause of action arose." (Italics supplied.)

Ella Frankenthal is not engaged in the business of a real-estate broker or real-estate salesman. Thus, the above-quoted statute has no application to one in her situation. The partnership is so engaged and, if it, and any partner who is so engaged, are licensed, the partners are not barred from instituting suit for their commissions by sec. 136.11, Stats.

Lastly, the attorney general relies on *Payne v. Volkman* (1924), 183 Wis. 412, 198 N. W. 438, as requiring ch. 136,

Stats., to be so construed as to require that an inactive partner be licensed as a condition to the licensing of the partnership. In that case a licensed Wisconsin real-estate broker and an unlicensed out-of-the-state broker entered into a brokerage contract to undertake the sale of certain real and personal property for the defendants. The court denied recovery to these two brokers, in a suit for their commissions, because the out-of-the-state broker Payne was not licensed in Wisconsin. In its opinion the court stated (p. 419):

"While a licensed real-estate broker is permitted to employ agents who are designated real-estate salesmen, the law does not authorize a partner to engage in the real-estate business unless he joins in the application. The contract is joint, and if invalid as to the plaintiff *Payne* it must be held invalid *in toto*."

The *Payne v. Volkman Case* is distinguishable from the instant case because it was governed by the original licensing act of 1919 before the 1929 revision and the enactment of present sec. 136.07 (2), Stats. Furthermore, the out-of-the-state broker Payne was engaged in selling real estate in Wisconsin while Ella Frankenthal is not.

It is our considered judgment that sec. 136.07 (2), Stats., must be construed as permitting a partnership to be licensed without requiring an inactive partner also to be licensed. Therefore, the attempt of the defendant board to reverse its prior policy of many years in so interpreting such section is invalid and void.

The last issue to be considered is whether it was error for the trial court to provide in the judgment for taxation of costs against the defendant board. Costs may not be taxed against the state unless authorized by statute. *Sandberg v. State* (1902), 113 Wis. 578, 589, 89 N. W. 504; *Frederick v. State* (1929), 198 Wis. 399, 224 N. W. 110; and *Holton & Hunkel Greenhouse Co. v. State* (1957), 274 Wis. 337, 345, 80 N. W. (2d) 371. This principle is equally applicable

to state administrative agencies such as the defendant board, and this court has consistently adhered to the practice of not permitting costs to be taxed on appeal against state administrative agencies.

Counsel for the plaintiffs places great reliance upon *Baxter v. State* (1860), 10 Wis. *454. That case held that when the legislature authorizes suit against the state it subjects the state to all the general laws applicable to a legal controversy. From this premise it is argued that the state is fully bound by every statute and court rule of the state applicable to pleading and practice, including taxation of costs. This is rather a persuasive argument and one that this court would seriously consider if we were passing on the issue for the first time. However, this very argument was rejected in *Sandberg v. State, supra,* and for over fifty years the legislature has acquiesced in such statutory interpretation. We deem that if a change should be made in the rule of that case, the legislature is the body which should make it and not this court.

*By the Court.*—Judgment modified by deleting the item of costs taxed, and, as so modified, is affirmed.

The following opinion was filed May 6, 1958:

CURRIE, J. (*on motion for rehearing*). The brief filed by the attorney general takes sharp issue with the holding in our original opinion, that the mimeographed instructions issued by the board covering renewal of real-estate brokers' licenses, constituted a "rule" within the purview of the Wisconsin Administrative Procedure Act (ch. 227, Stats.). We are far from being persuaded that such determination was error in so far as it related to the change in prior policy embodied in such mimeographed instructions by which it was attempted to require that an inactive partner in a partnership be licensed as a condition to licensing the partnership. It may well be that such mimeographed instructions may have

contained other material which would not qualify as a "rule," but we were not concerned with the same on this appeal.

Sec. 227.01 (3), Stats., defines a "rule" as follows:

" 'Rule' means a regulation, standard, statement of policy, or general order (including the amendment or repeal of any of the foregoing), of general application and having the effect of law, issued by an agency to implement, interpret, or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency."

The particular mimeographed instruction under attack in this case was a "statement of policy . . . of general application and having the effect of law, issued . . . to . . . interpret . . . legislation . . . administered by" the board. It does not fall within any of the exceptions stated in sec. 227.01 (4) and (5), Stats.

When a party files an application for a license with an administrative agency and the latter points to some announced agency policy of general application as a reason for rejecting the application, such announced policy constitutes a rule, the validity of which the applicant is entitled to have tested in a declaratory action instituted pursuant to sec. 227.05, Stats. However, if the application is rejected because of some ruling which is not applicable generally but is limited to the facts presented by applicant, then the situation is governed by the exception set forth in sec. 227.01 (4) [1] and such a ruling does not constitute a "rule" under ch. 227, Stats. The facts in the instant case clearly fall within the former category and not the latter.

---

[1] ". . . The fact that a statement of policy or an interpretation of a statute is made in the decision of a case or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts involved does not render the same a rule within sub. (3) or constitute specific adoption thereof by the agency so as to be required to be issued and filed as provided in this subsection."

It does not appear from the facts in *Kubista v. State Annuity and Inv. Board* (1950), 257 Wis. 359, 43 N. W. (2d) 470, whether the letter of the agency, which denied the state employee's application to change the plan of payment of an annuity as having been made too late, was based upon an agency ruling of general application. Therefore, we prefer to rest our determination, that a "rule" was present in the instant case, upon the statutory definition of "rule" quoted above rather than upon the *Kubista Case*.

Upon further study of the problem we are of the opinion that the case of *Wisconsin Telephone Co. v. Wisconsin E. R. Board* (1948), 253 Wis. 584, 34 N. W. (2d) 844, is in no manner controlling of the issue under consideration here. That case, in holding that only an order entered in a contested proceeding is reviewable under sec. 227.15, Stats., is not authority for the converse, *i.e.,* an agency determination or ruling which is not reviewable under sec. 227.15 is *ipso facto* a "rule" which may be attacked in a declaratory proceeding instituted pursuant to sec. 227.05.

The brief of the attorney general further contends that only those agency interpretations of statutes, which are formally promulgated and filed as "rules" under the procedure set forth in ch. 227, Stats., qualify as "rules" under sec. 227.01 (4), Stats., which may be attacked in a declaratory proceedings instituted pursuant to sec. 227.05. We cannot agree with such interpretation of secs. 227.01 (4) and 227.05, and adhere to our determination on this point made in the original opinion herein. A holding to the contrary would permit an agency to escape judicial review of its rules, as contemplated by sec. 227.05, by merely adopting the expedient of never complying with the statutory requirements with respect to filing, noticing for hearing, and publication.

*By the Court.*—The motion for rehearing is denied without costs.

HALLOWS, J., took no part.