CROWN ZELLERBACH CORPORATION, a/k/a GAYLORD CONTAINER CORPORATION, Respondent, v. DEPARTMENT OF CITY DEVELOPMENT OF THE CITY OF MILWAUKEE, as agent for the State of Wisconsin and the State Highway Commission, Appellants.

*No. 214. Argued April 27, 1970.—Decided June 2, 1970.*
(Also reported in 177 N. W. 2d 94.)

For the appellants there was a brief by *John J. Fleming,* city attorney, and *Harvey G. Odenbrett* and *Wallace E. Zdun,* assistant city attorneys, and oral argument by *Mr. Odenbrett.*

For the respondent there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland,* attorneys, and *Victor M. Harding* and *Anthony W. Asmuth III* of counsel, all of Milwaukee, and oral argument by *Victor M. Harding.*

CONNOR T. HANSEN. The trial court made the following findings which provide the factual basis for this appeal:

"(3) The plaintiff owned lands on which it operated a plant for the manufacture of corrugated boxes and paperboard shipping containers, at the southeast corner of West Silver Spring Drive and North Teutonia Avenue in the City of Milwaukee. West Silver Spring Drive extends in an easterly and westerly direction, and North Teutonia Avenue extends north and south.

". . . .

"(5) On said land plaintiff's manufacturing plant is a one story building, 227 feet x 492 feet, with an annexed single story structure designed for an office, 25 x 80

feet, the entire plant comprising a total area of 113,684 feet.

"(6) The total land area of the plaintiff which was taken in connection with this public improvement, is 7,080 square feet. This consisted of two strips, one of which was 406.79 feet in length along North Teutonia Avenue, and the other strip was 410.79 feet along West Silver Spring Drive.

"  .  .  .  .

"(12) Prior to the taking, West Silver Spring Drive, along the plaintiff's frontage, consisted of two, two-lane, paved roadways separated by a median strip approximately 10 feet wide, with the roadway on the south side of the median strip for east bound traffic, and the roadway on the north side of the median strip for west bound traffic. There was a gravel shoulder 18 feet wide between the north boundary of the plaintiff's property and the south edge of the pavement of the east bound roadway, which paved east bound roadway was approximately 20 feet wide. This gravel shoulder was within the right of way of West Silver Spring Drive. There was no curb or gutter along plaintiff's north property line. There were four openings in the median strip, one about 125 feet long directly in front of and to the east of the concrete apron in front of plaintiff's loading dock, another to the west and two to the east of this opening, each approximately 40 feet in length. These openings provided access to the plaintiff's loading dock and property for vehicles approaching in the west bound roadway of West Silver Spring Drive, as well as access to the west bound roadway for vehicles leaving plaintiff's loading dock and property. There was a rising grade from east to west (to Teutonia Avenue) on West Silver Spring Drive along plaintiff's property.

"(13) After the taking, West Silver Spring Drive was converted to a four-lane roadway, depressed to pass under North Teutonia Avenue with one-way service streets above the grade of the depressed roadway on either side thereof, for traffic entering and leaving West Silver Spring Drive at this intersection.

"  .  .  .

"(16) Prior to the taking, plaintiff's loading dock was located at the northeast corner of the plant building, and fronted along West Silver Spring Drive. It consisted of

eight stalls, or four double bays within the building, each having a depth of about 50 feet from loading platform to door, which was sufficient to accommodate a tractor and trailer within the building with the doors closed. The overall width of the loading dock was 88 feet.

"(17) A concrete apron, 88 feet in width (the width of the dock from east to west), extended from the front of the loading dock (the front doors) to the plaintiff's north property line, or a distance of 53 feet 9 inches on the east and 60 feet on the west. The concrete apron sloped southerly toward the loading dock, the greatest slope being toward the westernmost bay, and for this reason this bay was not used for loading.

"(18) In connection with the use of plaintiff's former loading dock, practically all of the vehicles serving the plaintiff's plant were 50 foot tractor-trailer units. The loading operation consisted in backing the units into the bay or stall.

" . . .

"(28) The plaintiff's former loading dock heretofore described, fronting on the north side of the building, was not obsolete immediately before the taking, but was adequate and efficient for its purposes.

" . . .

"(30) After the taking, the above described changes in West Silver Spring Drive rendered the use of the plaintiff's former loading dock impractical by reason of the following circumstances:

"(a) The docking operation could be made only from the east bound roadway, and by backing against east bound traffic on said roadway.

"(b) The east bound roadway serves as an access ramp to the east bound lane or roadway of West Silver Spring Drive, and thus serves all vehicular traffic intending to enter the east bound lane of West Silver Spring Drive proceeding from the south and north of Teutonia Avenue and from the west on the service road intersecting North Teutonia Avenue.

"(c) There is heavy vehicular traffic on said east bound service roadway, particularly during the so-called rush hours.

"(d) Vehicular traffic on the said east bound service roadway would interfere with the backing movement on said roadway (or conversely, the backing movement

would interfere with the flow of vehicular traffic on the said east bound service roadway), and the backing movement would have to be made on the blind side of the truck, which prevents the driver from seeing the area he is backing into.

"(e) Since a tractor-trailer, in docking, must back straight into the dock stalls, the docking maneuver could not be made without moving onto the pavement of the east bound service roadway.

"(f) Such docking operations could not be performed without hazard to vehicular traffic (including the trucks engaged in the docking maneuver) on the east bound service roadway.

"(31) As a result of the above described changes at the intersection of Teutonia and Silver Spring, docking at the plaintiff's former loading dock would now be impractical. A curb now extends along the south edge of the service roadway, with cement sidewalk south of the curb and there are no driveway openings. Even with driveway openings the change in West Silver Spring Drive, after the taking, rendered the use of the plaintiff's former loading dock impractical."

As a result in the change in West Silver Spring Drive, plaintiff relocated its loading dock before the actual reconstruction of West Silver Spring Drive began and before the date of the actual taking. As a consequence of relocating the loading dock, the employee parking lot was moved and a new employee entrance and main office entrance was constructed.

Appellant asserts that the loading dock was adequate and sufficient for its purposes after the taking in 1963 but fails to make any direct challenge or claim that certain specific findings of the trial court are contrary to the great weight and clear preponderance of the evidence.

" 'Since the trial court tried the case without a jury, its findings will not be upset on appeal unless they are contrary to the great weight and clear preponderance of the evidence and it is not necessary the evidence in support of the findings constitutes the great weight or clear preponderance of the evidence. Nor is it sufficient

that there is evidence to support a contrary finding. To command a reversal, such evidence although sufficient to support a verdict must constitute the great weight and the clear preponderance of the evidence. *Druml Co. v. Capitol Machinery Sales & Service Co.* (1965), 29 Wis. (2d) 95, 138 N. W. (2d) 144; *Columbia Stamping & Mfg. Co. v. Reich* (1965), 28 Wis. (2d) 297, 137 N. W. (2d) 45; *Estate of Perssion* (1963), 20 Wis. (2d) 537, 123 N. W. (2d) 465; *State ex rel. Isham v. Mullally* (1961), 15 Wis. (2d) 249, 112 N. W. (2d) 701.'" *Estfred Corp. v. Freeman* (1967), 36 Wis. 2d 19, 25, 26, 153 N. W. 2d 13.

The trial court was correct in its determination that the amount of compensation to be paid plaintiff was governed by sec. 32.09 (6), Stats.:

"32.09 **Rules governing determination of just compensation.** In all matters involving the determination of just compensation in eminent domain proceedings, the following rules shall be followed:

". . .

"(6) In the case of a partial taking, the compensation to be paid by the condemnor shall be determined by deducting from the fair market value of the whole property immediately before the date of evaluation, the fair market value of the remainder immediately after the date of evaluation, assuming the completion of the public improvement and giving effect, without allowance of offset for general benefits, and without restriction because of enumeration but without duplication, to the following items of loss or damage to the property where shown to exist:

"(a) Loss of land including improvements and fixtures actually taken.

"(b) Deprivation or restriction of existing right of access to highway from abutting land, provided that nothing herein shall operate to restrict the power of the state or any of its subdivisions or any municipality to deprive or restrict such access without compensation under any duly authorized exercise of the police power.

". . . .

"(e) Damages resulting from actual severance of land including damages resulting from severance of improve-

ments or fixtures and proximity damage to improvements remaining on condemnee's land."

We do not agree with appellant's contention that, even though there has been a partial taking of land, it is not liable for damages [1] because the reconfiguration of West Silver Spring Drive is an exercise of police power, and sec. 32.09 (4) controls:

"32.09. . . .

"(4) Where a depreciation in value of property results from an exercise of the police power, even though in conjunction with the taking by eminent domain, no compensation shall be paid for such depreciation except as expressly allowed in sub. (6) and s. 32.19."

The proceedings in this case were brought under sec. 84.09 (3m), Stats.,[2] the eminent domain statute. "More-

---

[1] Appellant also claims it was error to consider the relocation of the employees' entrance to the plant and the costs of certain landscaping. However, the trial court did not consider these elements in determining fair market value before and after the taking:

"Defendant maintains that costs for the relocation of the employees' parking lot, employees' entrance, and changes in the main entrance of the plant are not in any event compensable items of expense and 'should not be considered by the court in its deliberations.' The court agrees as to the relocation costs of the employees' entrance. The court is also in agreement with plaintiff's contention that cost of relandscaping should not be considered in excess of $700.00."

The total cost of plant improvement, including the relocation of the loading dock, engaged in by the plaintiff was $126,752.28.

[2] "84.09 Acquisition of lands and interests therein . . . .

"(3m) The commission may order that all or certain parts of the required land or interest therein be acquired for the commission by a board, commission or department of the city within whose limits said land is located. . . . If the needed lands or interests therein cannot be purchased expeditiously within the appraised price, the board, commission or department may, subject to approval by the state highway commission, acquire them by condemnation in the name of the state under ch. 32. The city attorney may act as counsel in any proceedings brought under authority of

over, the Wisconsin statutes specifically provide that compensation shall be paid when there is a partial taking of premises, such as access rights under the power of eminent domain." *Hastings Realty Corp. v. Texas Co.* (1965), 28 Wis. 2d 305, 312, 137 N. W. 2d 79. Appellant is making the same argument that was put forth and rejected by this court in *Hastings, i.e.,* the taking involves an exercise of police power and therefore under secs. 32.09 (4) and 32.09 (6) (b), such damages are not compensable.

In *Hastings* this court reviewed the following cases, most of which are also cited by appellant in the present appeal: *Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. 2d 208, 71 N. W. 2d 276; *Nick v. State Highway Comm.* (1961), 13 Wis. 2d 511, 109 N. W. 2d 71, 111 N. W. 2d 95; *Stefan Auto Body v. State Highway Comm.* (1963), 21 Wis. 2d 363, 124 N. W. 2d 319; *McKenna v. State Highway Comm.* (1965), 28 Wis. 2d 179, 135 N. W. 2d 827.

"Each of these cases above is readily distinguishable from the case before us. In each of them the road was declared to be a controlled-access road prior to any acquisition of access rights. In the case before us the highway has not been declared to be access controlled, and it would be unlawful for the state highway commission to seize access rights without compensation and without following the administrative procedure outlined in sec. 84.25, Stats.

"This court in arriving at our decision in this case has taken judicial notice of the files of the state highway commission in regard to the administrative proceedings

this subsection. Special counsel may be employed but only with the consent of the governor and the state highway commission. The city, upon agreement with the commission, may pay for the land or interests acquired from city funds made available for such purpose or not otherwise appropriated, as an advance subject to reimbursement by the commission or as part of the city's contribution toward the cost of the improvement."

declaring the highways controlled access in the cases of *Carazalla, McKenna,* and *Stefan Auto Body.* It is apparent from these files that the state highway commission does in fact follow the administrative procedure of determining after a public hearing whether it is 'necessary, in the interest of the public safety, convenience and the general welfare to prohibit entrance upon and departure from the highway or street except at places specially designated.'

"It is apparent that the legislation contemplates that the police power of the state shall be exercised only after such findings are made. Sec. 84.25, Stats., requires preliminary engineering studies and public hearings, which are to be held only after three weeks' notice by publication in the county where the highway is located. Witnesses at these hearings give testimony showing the necessity of limiting access to make travel on the road safer for the general public. It is also significant that, with the exception of interstate highways, only 1,500 miles of controlled-access highways are authorized by the legislature in the state—and then only in rural areas." *Hastings Realty Corp. v. Texas Co., supra,* pages 314, 315.[3]

This court then went on to hold that the avenue in question had not been declared a controlled-access highway pursuant to law and the police power had not been exercised, rather the taking had been by eminent domain. Recognized was the ability of the highway commission to limit access at certain points without the exercise of police power:

"It is evident that the highway commission may wish to limit access at particular points, even though it is not thought necessary to exercise the powers given under sec. 84.25, Stats., and even though a seizure under the police power cannot be justified. In such a case the legislature has wisely authorized the purchase of access rights

[3] *See also: Wisconsin Town House Builders v. Madison* (1967), 37 Wis. 2d 44, 154 N. W. 2d 232, where a controlled-access street was created under ch. 32, Stats., and no access rights existed prior to the establishment of the street by a relocation order.

as was done in this case. (Sec. 32.09 (6) (b).)" *Hastings Realty Corp. v. Texas Co., supra,* pages 315, 316.

*Hastings* is dispositive of appellant's argument. As in *Hastings,* there were no proceedings to have West Silver Spring Drive declared a controlled-access highway and no findings were made that it was necessary, in the interest of public safety, convenience and the general welfare, to limit access to and from West Silver Spring Drive. Thus, there has not been any "duly authorized exercise of the police power." Sec. 32.09 (6) (b), Stats. Therefore, the trial court was correct in its application of sec. 32.09 (6), and in establishing fair market value could consider the various factors, including relocation of the loading dock, which occurred as a result of the partial taking and access being limited to West Silver Spring Drive.

"Under sec. 32.09 (6), Stats., the measure of damages in a condemnation proceeding where there is a severance is the difference between the fair market value of the whole property immediately before the taking and the fair market value of the remainder immediately thereafter. By use of the phrase 'and without restriction because of enumeration' found in sec. 32.09 (6), it seems reasonable to conclude that the legislature intended that every element which affects fair market value should be considered. This is in accord with the great weight of authority. See 4 Nichols, Eminent Domain (3d ed. 1962), p. 3 *et seq.,* sec. 12.1, where the author states (p. 4) that, 'All elements of value which are inherent in the property merit consideration in the valuation process.' The author also states that evidence is admissible that the remainder area is no longer capable of use for a particular purpose or that its purpose or that its facility therefor has been impaired. See 4 Nichols, *supra,* sec. 14.243, and cases cited at note 4, page 580. These principles were approved by this court in *Carazalla v. State* (1955), 269 Wis. 593, 70 N. W. (2d) 208, 71 N. W. (2d) 276 (on rehearing), where the court stated (p. 608b) :

" '. . . in case of a partial taking of land by eminent domain *any* damages to the remaining land, which results from the use to which the parcel taken is to be devoted, is a proper item to be included in determining the value of the owner's remaining land after the taking.' (Emphasis supplied.)" *Ken-Crete Products Co. v. State Highway Comm.* (1964), 24 Wis. 2d 355, 359, 360, 129 N. W. 2d 130.

### Costs and interest.

This proceeding is governed by ch. 32 of the Wisconsin statutes and the right of the prevailing party to receive interest on an award determined on appeal to the circuit court is contained in sec. 32.05 (10) (b), Stats., which reads:

"**32.05 Condemnation for streets, highways, storm or sanitary sewers, watercourses, alleys, airports and mass transit facilities. . . .**
". . . .
"(10) APPEAL FROM COMMISSION'S AWARD TO CIRCUIT COURT. . . .
"(b) The court shall enter judgment for the amount found to be due after giving effect to any amount paid by reason of a prior award. The judgment shall include legal interest on the amount so found due from the date of taking if judgment is for the condemnor, and from 14 days after the date of taking if judgment is for the condemnee. Costs shall be allowed pursuant to s. 271.02 (2). If the appeal was by the condemnor and if the amount of just compensation found under par. (a) exceeds the amount of the basic award, the condemnee shall be deemed the 'successful party' under s. 271.02 (2)."

Sec. 271.02 (2), Stats., leaves the taxing of other items of cost to the discretion of the court:

"**271.02 Costs limited, discretionary. . . .**
"(2) In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the

court may award to the successful party such costs (exclusive of disbursements) not exceeding $100, as the court deems reasonable and just, in view of the nature of the case and the work involved. This subsection refers only to such costs and fees as may be taxed by the authority of the statutes, independent of any contract of the parties upon the subject, which contract shall apply unless the court finds that the provisions thereof are inequitable or unjust."

The cases of *Klingseisen v. State Highway Comm.* (1964), 22 Wis. 2d 364, 126 N. W. 2d 40, and *Frankenthal v. Wisconsin Real Estate Brokers' Board* (1958), 3 Wis. 2d 249, 88 N. W. 2d 352, 89 N. W. 2d 825, relied upon by appellant, are distinguishable from this case. They stand for the proposition that costs and disbursements cannot be taxed in a proceeding against the state unless specifically authorized by statute. Such is not the situation in the case presently before us, because sec. 32.05 (10) (b), Stats., authorizes the taxation of costs. We conclude that the trial court properly exercised its discretion in this case in taxing costs and disbursements.

The trial court awarded the plaintiff interest, costs and disbursements in the amount of $8,103.14, which includes interest in the amount of $7,652. The appellant takes the position that interest should have been allowed only in the amount of $3,375.89, representing the amount accrued if the trial court's decision had been rendered within sixty days after trial. We find no authority for such a position and it is contrary to the specific statutory authorization of interest accruing "from 14 days after the date of taking if judgment is for the condemnee." Sec. 32.05 (10) (b), Stats. There was, therefore, no error by the trial court in its allowance of costs, disbursements and interest.

*By the Court.*—Judgment affirmed.