SCHOOLWAY TRANSPORTATION COMPANY, INC., Appellant,
v. DIVISION OF MOTOR VEHICLES, Respondent.

*No. 779 (1974). Argued March 4, 1976.—Decided April 7, 1976.*
(Also reported in 240 N. W. 2d 403.)

224

For the appellant there were briefs by *Scott H. Engroff, Willard C. Jackson* and *Michael, Best & Friedrich* of Milwaukee, and oral argument by *David J. Cannon.*

For the respondent the cause was argued by *Albert Harriman,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

CONNOR T. HANSEN, J. The case was submitted on a stipulation of facts.

Ninety percent of the business of Schoolway consists of transporting children to and from school. The remaining ten percent is divided about equally between charter and industrial contract work. The nature and relative percentages of this business had remained constant for at least 12 years prior to the commencement of this action. Its busses are used interchangeably for the purposes stated.

Prior to 1971, the Department issued dual licenses for Schoolway's busses, as well as for those of similarly situated companies. These dual licenses were issued under special licensing statutes for school busses and the urban mass transportation of passengers, when such busses were to be used interchangeably for the transportation of school children and the performance of charter and contract work. Thereafter, the Department requested advice from the attorney general in regard to its interpretation and application of the particular statute. Following the advice so received, the Department now refuses to issue dual licenses for busses utilized for the

two specified purposes. The former practice of dual registration was never evidenced by the filing of documents with either the revisor of statutes or the secretary of state pursuant to the requirements of the administrative procedure statutes. Similarly, neither was the Department's changed interpretation and application of the particular licensing statutes evidenced by the filing of such documents.

Schoolway also proposed to the Department a plan by which its busses would be segregated into two groups. The first group would be used solely for the transportation of school children, while the second would be used only for Schoolway's contract and charter operations. The Department advised Schoolway that, even if such segregation were made, the second group of busses would still not be eligible for licensing under the urban mass transportation of passengers provisions of the statutes, and that it would deny any application for a license made on that basis.

Schoolway initiated this action by filing a complaint with the circuit court requesting a declaratory judgment under either sec. 227.05, Stats., or sec. 269.56, depending on whether the revised application was determined to be an administrative rule. The trial court concluded that the change in interpretation and application did not constitute an administrative rule. The court, therefore, issued a declaratory judgment pursuant to sec. 269.56, by which it was declared that the statute does not permit dual licensing for the stated purposes and, furthermore, that Schoolway's charter and contract operations do not qualify its busses for licensing as vehicles engaged in urban mass transportation of passengers.

The following issues are presented for determination:

1. Is dual licensing under sec. 341.26 (2) (d) and (h), Stats., permitted by the terms of the statute?

2. Does Schoolway's charter and contract work qualify any of its busses for licensing under sec. 341.26 (2) (h), Stats.?

3. Is the Department's revised interpretation and application of the licensing statute a rule within the meaning of sec. 227.01 (3) and (4), Stats., and thus subject to the procedural requirements applicable to such rules?

### *Dual Licensing.*

Schoolway takes the position that the Department's revised application of sec. 341.26, Stats., is contrary to the terms of the statute. It argues that its busses should continue to be eligible for licensing for both transportation of school children under sec. 341.26 (2) (d) and for its contract and charter operations under sec. 341.26 (2) (h).

Section 341.26 (2), Stats., provides for reduced rate licenses for vehicles engaged in certain specified activities. If a vehicle does not qualify for the preferred license rate, higher fees must be paid in accordance with rates established by other sections of the registration provisions contained in the vehicle code.

Section 341.26 (2) (d) and (da), Stats., provides for registration fees for school busses:

"(d) A school bus owned, operated or under contract with a private or public school or college and *used exclusively* for transportation of students to or from school or college including extracurricular activities to or from points designated by such school or college;

"(da) When engaged in passenger-carrying operations other than as provided in par. (d), such school busses shall register and pay the fees for motor busses provided for in s. 341.25 (2), . . ."[1] (Emphasis added.)

Section 341.26 (2) (d), Stats., specifically states that in order to qualify for the reduced license fee, the school bus must be used *exclusively* for the transportation of

[1] Ch. 120, Laws of 1975, effective December 12, 1975, significantly changed the definition of a school bus by repealing and recreating sec. 340.01 (56), Stats.

students. Section 341.26 (2) (da) clearly provides that if a school bus is utilized for passenger-carrying operations other than those enumerated in sec. 341.26 (2) (d), registration and payment of fees is to be governed by sec. 341.25 (2). Nevertheless, Schoolway argues that if its busses qualify for some reduced rate under sec. 341.26 (2), other than the school bus qualification, it may pay the rates provided in sec. 341.26 (2) (d) rather than those provided in sec. 341.25 (2). It bases this argument on sec. 341.25 (1), which states that vehicles shall pay the rates provided by that section "[u]nless a different fee is prescribed for a particular vehicle by s. 341.26. . . ." Schoolway urges that, since its busses should qualify for the public mass transportation fee of sec. 341.26 (2) (h), it may pay the school bus fee as provided by sec. 341.26 (2) (d).

We are not impressed with this argument. Section 341.26 (2) (da), Stats., plainly refers only to sec. 341.25 (2), and makes no reference to sec. 341.25 (1). Section 341.25 (2) establishes a registration fee schedule based on vehicle gross weight. It says nothing about different fees provided by sec. 341.26, as does sec. 341.25 (1).

When a statute is plain and unambiguous, no interpretation is required and there is no need to invoke statutory rules of construction, *Honeywell, Inc. v. Aetna Casualty & Surety Co.* (1971), 52 Wis. 2d 425, 429, 190 N. W. 2d 499. Thus, even if Schoolway's charter and contract operations were to qualify its busses for reduced rates under the sec. 341.26 (2) (h), Stats., urban mass transportation designation, the fact that it uses those same busses for the second purpose at all disqualifies its vehicles for registration as school busses under sec. 341.26 (2) (d). As the trial court stated:

"The policy behind the aforementioned statutes is one of granting substantial fee exemptions to vehicles solely engaged in the beneficial operation of transporting

schoolchildren. The preferential rate treatment extended to such vehicles is understandably and legitimately conditioned upon the exclusive use of the vehicles for that beneficial purpose."

In view of the clear statutory requirements, the Department was duty bound to cease its prior practice of allowing dual registration. *Racine v. Morgan* (1968), 39 Wis. 2d 268, 287, 159 N. W. 2d 129. It is incumbent upon the Department to adhere to the terms of the statute, and register vehicles under sec. 341.26 (2) (d), Stats., only if they are utilized exclusively for the transportation purposes provided therein. The trial court is affirmed in its determination on this issue.

*Schoolway's Qualification for Sec. 341.26 (2) (h), Stats., Licensing.*

Section 341.26 (2) (h), Stats., provides for special registration fees for the following category of vehicle:

"(h) A motor vehicle used for the urban mass transportation of passengers as defined in s. 71.18 (2) (a). . . ."

Section 71.18 (2) (a), Stats., defines urban mass transportation of passengers:

". . . (a) 'Urban mass transportation of passengers' means the transportation of passengers by means of vehicles having a passenger-carrying capacity of 10 or more persons including the operator, such capacity to be determined by dividing by 20 the total seating space measured in inches, when such transportation takes place entirely within contiguous incorporated cities or villages and in municipalities contiguous to that in which the carrier has its principal place of business, or within or between municipalities located within a radius of 10 miles of the municipality in which the carrier has its principal place of business, or entirely within one municipality or municipalities contiguous thereto, or

within a county having a population of 500,000 or more or within such county and the counties contiguous thereto, or suburban operations classified as such by the public service commission."

Schoolway has proposed to the Department a plan whereby it would segregate its busses into two groups, the first to be utilized exclusively for school bus purposes and the second to be utilized for its charter and contract operations. It is stipulated that prior to the application for licensing which gave rise to the instant litigation, and because of Schoolway's charter and contract operations, the Department licensed Schoolway's busses pursuant to the urban mass transportation designation of sec. 342.26 (2) (h), Stats. It has now advised Schoolway that its charter and contract operations do not qualify for such designation. Schoolway urges that its operations do qualify for licensing under sec. 341.26 (2) (h). The trial court was of the opinion that Schoolway's business does not qualify.

It is stipulated that Schoolway's operations meet the capacity and territorial requirements of sec. 71.18 (2) (a), Stats. It is also stipulated, however, that Schoolway is not regulated as a public carrier by the public service commission.

Schoolway contends that sec. 341.26 (2) (h), Stats., refers specifically to sec. 71.18 (2) (a), that it fits within the plainly stated definition contained in that provision, and that, therefore, it should be allowed to register its busses as engaged in the business of urban mass transportation of passengers.

The Department disputes this argument on the ground that sec. 71.18 (2) (a), Stats., should be construed with reference to the statute of which it is a part. Section 71.18 is a provision of the income tax code and it allows special taxation measures for corporations whose principal source of income is the urban mass transportation

of passengers. The definition of urban mass transportation contained in sec. 71.18 (2) (a), is formulated for use in the construction of the statute of which it is a part, *Price County Telephone Co. v. Lord* (1970), 47 Wis. 2d 704, 719, 177 N. W. 2d 904, and its intent must be construed with reference thereto, *Smith v. Brookfield* (1956), 272 Wis. 1, 5, 74 N. W. 2d 770. Therefore, the reference to the definition of sec. 71.18 (2) (a) in sec. 341.26 (2) (h) must be considered to be applicable in the same manner as it would be to the terms of the statute of which it is a part.

Section 71.18, Stats., was enacted by ch. 240, Laws of 1955, following issuance of a report by the governor's commission on urban mass transportation. That report has been made a part of the record herein. A review of that report indicates that the area of concern necessitating beneficial legislation was the financial plight of public carriers, which was leading to the possibility of a decrease or elimination of service to affected communities. (*See,* especially p. 1, Foreword, and p. 3, Conclusions.) This indicates that the taxation provisions of sec. 71.18 were intended to benefit public carriers. Such purpose is to be given consideration in construing a statute, *Alan Realty Co. v. Fair Deal Investment Co.* (1955), 271 Wis. 336, 340, 73 N. W. 2d 517. This conclusion is buttressed by the terms of sec. 71.18 (2) (b), which directs that costs and depreciation of property used in urban mass transportation are to be determined on the basis of reports and orders on file with the public service commission. Schoolway's operations are not regulated by the public service commission and thus no reports or orders would be filed with that agency by which the costs and depreciation terms of the statute could be applied.

Therefore, the definition in sec. 71.18 (2) (a), Stats., is applicable only to public mass transportation carriers.

No broader application for the term is permitted under sec. 341.26 (2) (h). Schoolway is not eligible for the reduced registration fee provided therein.

*Administrative Rules.*

Schoolway contends that the Department's revised interpretation and application of the statute in question constitutes promulgation of an administrative rule within the meaning of sec. 227.01 (3) or (4), Stats. It is stipulated that no documents were ever filed evidencing the Department's changed application and interpretation. Therefore, if such application is an administrative rule, it has been invalidly promulgated and is of no effect.

Section 227.01 (3) and (4), Stats., defines an administrative rule:

"(3) 'Rule' means a regulation, standard, statement of policy or general order (including the amendment or repeal of any of the foregoing), of general application and having the effect of law, issued by an agency to implement, interpret or make specific legislation enforced or administered by such agency or to govern the organization or procedure of such agency.

"(4) Every statement of general policy and every interpretation of a statute specifically adopted by an agency to govern its enforcement or administration of legislation shall be issued by it and filed as a rule. . . ."

We are of the opinion that the trial court was right when it concluded the decision of the Department to correct its erroneous application of sec. 341.26 (2), (da), Stats., the school bus special license statute, was a proper subject for judicial determination under the declaratory judgment provisions of sec. 269.56. Section 341.26 (2) (d), (da) is clear and unambiguous. Prior to 1971, the Department had erroneously applied those statutes.

However, we conclude a different situation prevails in regard to the decision of the Department to change its interpretation and application of sec. 341.26 (2) (h), Stats., the urban mass transportation special licensing statute. We deem the change in the interpretation of this particular statute by the Department is subject to the administrative rule provisions of sec. 227.01 (3) and (4). Hence the change in the interpretation and application of this statute, sec. 341.26 (2) (h), by the Department is a proper subject for judicial determination under the declaratory judgment provisions of sec. 227.05.

This court has addressed the issue of what constitutes an administrative rule on several occasions. In *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. 2d 249, 89 N. W. 2d 825, the state real estate brokers' board refused to issue a broker's license to a partnership because one of the partners was not individually licensed as a broker. Prior to this denial, the board had issued licenses to the partnership even though not all partners were individually licensed. Its new policy was evidenced by a mimeographed sheet of instructions stating that in situations where a partnership applied for licensing, all partners must be licensed as brokers. This court held at page 253, that the issuance of the mimeographed instructions constituted administrative rule making. Upon motion for rehearing, the position of this court was reaffirmed and clarified:

"The particular mimeographed instruction under attack in this case was a 'statement of policy . . . of general application and having the effect of law, issued . . . to . . . interpret . . . legislation . . . administered by' the board. It does not fall within any of the exceptions stated in sec. 227.01 (4) and (5), Stats.

"When a party files an application for a license with an administrative agency and the latter points to some announced agency policy of general application as a reason for rejecting the application, such announced policy

constitutes a rule, the validity of which the applicant is entitled to have tested in a declaratory action instituted pursuant to sec. 227.05, Stats. However, if the application is rejected because of some ruling which is not applicable generally but is limited to the facts presented by applicant, then the situation is governed by the exception set forth in sec. 227.01 (4) and such a ruling does not constitute a 'rule' under ch. 227, Stats. The facts in the instant case clearly fall within the former category and not the latter." *Frankenthal, supra,* page 257b.

In *Josam Mfg. Co. v. State Board of Health* (1965), 26 Wis. 2d 587, 133 N. W. 2d 301, the state board of health issued a general letter retracting permission to utilize a particular type of plumbing fitting, which it considered failed to meet statutory and administrative code regulations. This court held that the letter constituted an administrative rule, page 595:

"The 'To Whom It May Concern' letter of July 3d is considered to be a rule. It was a statement of agency policy of general application. While it arose out of the 'Unitron case,' nothing appears to indicate that the policy expressed in the letter is limited to only Josam Unitron fittings. . . ."

The facts in *Barry Laboratories, Inc. v. State Bd. of Pharm.* (1965), 26 Wis. 2d 505, 132 N. W. 2d 833, required a result different from those of the foregoing cases. It was there concluded that letters issued by the board to certain pharmaceutical manufacturers wherein it was stated out-of-state manufacturers would be required to obtain a license if they were to sell prescription-legend drugs to persons in Wisconsin, did not fit the definition of an administrative rule. This was so because the statements did not have the effect of law, in that the question addressed was not within the board's expertise, nor did the board have the authority to enforce compliance with the opinion expressed by the

statements, pp. 515, 516. In distinguishing *Frankenthal,* *supra,* this court reaffirmed the conclusion reached in that earlier case:

"We said in *Frankenthal* that the mimeographed instruction, though not issued and filed as a rule, nevertheless was one under the definition in sec. 227.01 (3), Stats., *i.e.,* that it was a statement of policy of general application *having the effect of law.* It could be argued with some reason that the instruction in *Frankenthal* was a rule by virtue of sub. (4) which required that a 'statement of general policy . . . specifically adopted by an agency to govern its enforcement or administration of legislation' shall be filed as a rule. If the latter, notice and public hearing were not required before its adoption.

"But whichever rationale be correct, the board in *Frankenthal* was relying on the instruction as a principle (or 'rule') controlling its administrative action which directly affected rights and interests, namely the denial of a license. As far as the board was concerned, the interpretation embodied in the instruction had the effect of law. The board had the means to enforce it as law and did so until invalidity was found on judicial review. . . ." *Barry Laboratories, Inc. v. State Bd. of Pharm., supra,* page 516.

Schoolway urges that *Frankenthal, supra,* controls the disposition of the issue here presented. Schoolway's position has merit only with respect to the Department's new policy of excluding Schoolway's contract and charter operations from registration under the urban mass transportation provisions of sec. 341.26 (2) (h), Stats.

The circumstances of the instant case distinguish it from *Frankenthal, supra,* and *Josam, supra,* insofar as the prior dual licensing procedure is concerned. In *Frankenthal, supra,* p. 255, the statute in question was considered ambiguous and thus interpretation was required. In contrast, the dual licensing practice is prohibited by the clear exclusivity requirements of the school bus licensing provisions of sec. 341.26 (2) (d) and (da),

Stats. Thus, no interpretation of that section is necessary, *Honeywell, Inc. v. Aetna Casualty & Surety Co., supra.*

The facts of this case show that the Department has been allowing dual registration for a number of years. It is clear, however, that by allowing such dual registration, the Department acted outside of the authority conferred upon it by sec. 341.26 (2) (d) and (da), Stats. The Department's revised application of these statutes serves to bring its practices into conformity with the plain meaning of the statute, a course the Department was obliged to pursue when confronted with its error. *Racine v. Morgan, supra.*

The interests of Schoolway, and others operating similar businesses, have been affected by the change in the Department's previously erroneous application of the school bus licensing statute. However, this in no way modifies the duty of the Department to administer the statute according to its plain terms and to correct its error.

This is not a regulation, standard, statement of policy or general order within the meaning of sec. 227.01 (3), Stats., *supra,* and *Josam Mfg. Co. v. State Board of Health, supra.* Neither is it a statement of general policy or interpretation of a statute within the meaning of sec. 227.01 (4), *supra.* Therefore, there is no requirement that the Department comply with the filing procedures mandated in connection with promulgation of administrative rules by sec. 227.01 (4) or 227.023.

The Department has also revised its interpretation of the urban mass transportation provisions of sec. 341.26 (2) (h), Stats., and will no longer permit Schoolway to register its busses for charter and contract work pursuant to the terms of that section. Since the terms of that section do not specifically exclude busses engaged in charter and contract work, the Department relies on

the context of ch. 71 in which the definition of urban mass transportation is contained to reach its conclusion that Schoolway's busses do not qualify. This represents an interpretation of a statute within the meaning of sec. 227.01 (4). The interpretation is being administered as law and the Department relies upon it to deny Schoolway a license under sec. 341.26 (2) (h), as was the case in *Frankenthal, supra.* This interpretation is in direct contrast to the manner in which the statute was previously administered by the Department.

In view of these considerations, when the Department changed its interpretation of sec. 341.26 (2) (h), Stats., it was engaging in administrative rule making. Those who are or will be affected generally by this interpretation should have the opportunity to be informed as to the manner in which the terms of the statute regulating their operations will be applied. *See,* generally, Davis, *Administrative Law* (3d ed.) (hornbook series), pp. 34–36, secs. 2.05–2.08, pp. 147, 148, sec. 6.05. This is accomplished by the issuance and filing procedures established by secs. 227.01 (4) and 227.023 (1).

It is stipulated that the filing requirements of ch. 227, Stats., were not complied with for the change in the interpretation and application of the urban mass transportation provision. Since this change constituted promulgation of an administrative rule, failure to so file renders the rule invalid, sec. 227.023 (1). Thus, Schoolway is entitled to a declaratory judgment to that effect pursuant to sec. 227.05. We, therefore, conclude the trial court must be reversed on this issue.

We resolve the issues presented on this appeal by determining that:

Schoolway is prohibited by the terms of the statute from obtaining dual registration for its busses. This prohibition results from application of the plain language of the statute, rather than any interpretation thereof,

or statement of policy within the meaning of the definition of an administrative rule. Therefore, Schoolway is not entitled to a declaratory judgment on this issue pursuant to sec. 227.05, Stats. Rather, the rights declared on this issue by the trial court pursuant to sec. 269.56 are affirmed.

Schoolway is not entitled to registration of its busses at reduced rates under the terms of the sec. 341.26 (2) (h), Stats., urban mass transportation designation. However, this interpretation of the statute should have been filed by the Department as an administrative rule in accordance with sec. 227.01 (4). The rule is invalid until such measures are taken. Schoolway was entitled to a declaratory judgment pursuant to sec. 227.05 on this issue and the trial court was in error, both in its determination that the changed interpretation was not a rule and in failing to make a declaration on this issue pursuant to sec. 227.05.

*By the Court.*—Judgment affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.