# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1823 |

| | |
|---|---|
| COMPLETE TITLE: | Lamar Central Outdoor, LLC d/b/a Lamar Advertising of Central Wisconsin and TLC Properties, Inc., <br>    Petitioners-Appellants-Petitioners, <br>  v. <br> State of Wisconsin Division of Hearings & Appeals, <br>    Respondent-Respondent, <br> State of Wisconsin Department of Transportation, <br>    Other Party. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 385 Wis. 2d 211,923 N.W.2d 168
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | December 19, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | September 4, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Portage |
| JUDGE: | John M. Counsell |

JUSTICES:

KELLY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, REBECCA GRASSL BRADLEY, DALLET, and HAGEDORN, JJ., joined.

NOT PARTICIPATING:

ATTORNEYS:

For the petitioners-appellants-petitioners, there were briefs filed by *Thomas S. Hornig*, *Kraig A. Byron*, and *von Briesen & Roper, S.C.*, Madison. There was an oral argument by *Thomas S. Hornig*.

For the respondent-respondent, there was a brief filed by *Thomas C. Bellavia*, assistant attorney general; with whom on the

brief was *Joshua L. Kaul*, attorney general. There was an oral argument by *Thomas C. Bellavia*.

There was an amicus curaie brief filed on behalf of Wisconsin Manufacturers & Commerce, Midwest Food Products Association, Outdoor Advertising Association of Wisconsin, Wisconsin Cheese Makers Association and Wisconsin Dairy Alliance by *Robert I. Fassbender* and *Great Lakes Legal Foundation*, Madison. There was an oral argument by *Robert I. Fassbender*.

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1823
(L.C. No. 2016CV196)

STATE OF WISCONSIN : IN SUPREME COURT

Lamar Central Outdoor, LLC d/b/a Lamar Advertising of Central Wisconsin and TLC Properties, Inc.,

     Petitioners-Appellants-Petitioners,

  v.

State of Wisconsin Division of Hearings & Appeals,

     Respondent-Respondent,

State of Wisconsin Department of Transportation,

     Other Party.

**FILED**

**DEC 19, 2019**

Sheila T. Reiff
Clerk of Supreme Court

KELLY, J., delivered the majority opinion of the Court, in which ROGGENSACK, C.J., ANN WALSH BRADLEY, ZIEGLER, REBECCA GRASSL BRADLEY, DALLET, and HAGEDORN, JJ., joined.

REVIEW of a decision of the Court of Appeals. *Reversed and the cause is remanded to the circuit court.*

¶1 DANIEL KELLY, J. From time to time an administrative agency changes its interpretation of a statute in a manner that

adversely affects a regulated activity. Here, an agency developed a new statutory interpretation that prohibited the owner of a roadside sign from remedying a modification that caused the sign to lose its "legal, nonconforming" status. In this case we address whether Wis. Stat. § 227.10(1)(2015-16)[1] required the agency to promulgate a rule containing the new statutory interpretation before applying it against the sign owner. We conclude that our statutes do require promulgation of a new rule under circumstances presented by this case, and therefore we reverse the decision of court of appeals.[2]

## I. BACKGROUND

¶2 On a piece of property next to Interstate 39 in Stevens Point, Wisconsin, there is a sign. It has been there since 1991 when Orde Advertising obtained a permit to build it. Upon its completion, the sign (we will refer to it as the "Billboard") complied with the terms of its permit and all applicable laws (the "permit"). The Billboard has two faces and cumulatively measures 1,344 square feet. Orde Advertising sold the Billboard to Lamar Central Outdoor, LLC ("Lamar") in 1999.[3]

---

[1] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

[2] This is a review of an unpublished decision of the court of appeals, Lamar Central Outdoor, LLC v. Div. Hearing & Appeals, No. 2017AP1823, unpublished slip. op., (Wis. Ct. App. Nov. 29, 2018).

[3] The land on which the Billboard exists is owned by TLC Properties, Inc.

2

¶3 For purposes of this case, the Billboard came to the attention of the Wisconsin Department of Transportation (the "Department") in 2012 when Lamar applied for a permit to remove vegetation that partially obscured the Billboard from view (the "Application"). As part of the permitting process, the Department reviewed historical photographs, at least one of which depicted the addition of an extension panel that increased the Billboard's total advertising area. But the added panel was temporary, and Lamar had already removed it several years before filing the Application. With the panel removed, the Billboard returned to its originally-permitted size. Nothing in the record suggests that, at the time Lamar filed the Application, the Billboard failed to comply with the terms of the permit or any applicable laws that existed at the time the permit issued.

¶4 But circumstances have changed, and the laws no longer allow the Billboard where it is presently located. As relevant here, the Billboard may exist only on property defined as a "business area." See Wis. Stat. § 84.30 (governing outdoor advertising signs). What qualifies as a business area depends on whether the property is adjacent to an interstate highway or, instead, a non-interstate highway. § 84.30(2)(a), (b). In 1996, the stretch of road next to the Billboard was redesignated from U.S. Highway 51 to Interstate Highway 39. The parties agree that, although the property on which the Billboard is located qualified as a business area when the adjacent highway was designated U.S. Highway 51, it no longer qualified once the highway became

3

Interstate 39.[4]  Consequently, the highway's redesignation changed the Billboard's status from legal to "legal, nonconforming."

¶5    The Billboard's status is important in this case because the Department says that "legal, nonconforming" signs like the Billboard may not be enlarged.  And if they are enlarged, the Department says, they become illegal and are subject to removal. On that basis, the Department denied Lamar's Application.  The Department's amended decision[5] said that "records show this sign was 1344 square feet in area when it became nonconforming in 1996. Since then, the sign was enlarged, subjecting the sign to removal as an illegal sign."

¶6    Shortly after denying the Application, the Department sent Lamar an order requiring it to remove the Billboard (the "Order").  The operative part of the Order said:

> NOTICE:    Under the authority provided in Wisconsin Statutes, [§] 84.30(11) and Wisconsin Administrative

---

[4] When property is adjacent to a non-interstate highway, a "business area" comprises "any part of an adjacent area which is zoned for business, industrial or commercial activities under the authority of the laws of this state; or not zoned, but which constitutes an unzoned commercial or industrial area as defined in par. (k)."  Wis. Stat. § 84.30(2)(b).  However, when the property is adjacent to an interstate highway, "business areas" are "limited to commercial or industrial zones within the boundaries of incorporated municipalities, as those boundaries existed on September 1, 1959, and all other areas where the land-use as of September 1, 1959, was clearly established by state law as industrial or commercial."  Id.

[5] The Department actually issued two decisions denying the Application.  The second, dated October 10, 2012, is the same as the first except that it denied the Application for the additional reason that the vegetation Lamar wanted to clear was not within the "viewing zone" as defined by Wis. Stat. § 84.305(l)(i).

4

Code, [§] TRANS 201.09, you are hereby ordered to remove the above-described outdoor advertising sign within 60 days of the date of this notice.

. . . .

REASON FOR THIS ACTION: This sign does not comply with applicable federal and/or state laws and agreements, as detailed below: This sign has been enlarged, in violation of Wisconsin Administrative Code [§] Trans 201.10(2)(e) and Wisconsin Statute 84.30(5)(bm) . . . . This is an illegal sign.

¶7 Lamar requested a hearing before the Division of Hearings and Appeals (the "DHA") to review the Order and the Department's denial of the Application. The DHA said the Billboard lost its "legal, nonconforming" status when Lamar added the temporary panel. It also said that removing the temporary panel could not recapture the Billboard's prior status. Therefore, it concluded, Lamar must remove the entire Billboard.[6]

¶8 Lamar filed a petition for judicial review of the DHA's decision pursuant to Wis. Stat. § 227.52. The circuit court affirmed the DHA's final decision "in all respects."[7] The court of appeals affirmed. We granted Lamar's petition for review and now reverse.

## II. STANDARD OF REVIEW

---

[6] The Department conceded, before the DHA issued its decision in this case, that a change in the statutory definition of "viewing zone" covers the vegetation Lamar wished to clear. So the DHA concluded the second basis for denying the Application, as set forth in the Department's decision of October 10, 2012, is no longer valid.

[7] The Portage County Circuit Court affirmed the order of the Division of Hearing and Appeals, the Honorable Jon M. Counsell presided.

5

¶9 Our duty in this case is to review the DHA's decision, as opposed to that of the circuit court. Hilton ex rel. Pages Homeowners' Ass'n v. DNR, 2006 WI 84, ¶15, 293 Wis. 2d 1, 717 N.W.2d 166 ("When an appeal is taken from a circuit court order reviewing an agency decision, we review the decision of the agency, not the circuit court."). In performing that review, we do "not substitute [our] judgment for that of the agency as to the weight of the evidence on any disputed finding of fact," but we do not rely on "any finding of fact that is not supported by substantial evidence in the record." Wis. Stat. § 227.57(6). And we "accord no deference to the agency's interpretation of law." § 227.57(11); see also Tetra Tech EC, Inc. v. DOR, 2018 WI 75, ¶108, 382 Wis. 2d 496, 914 N.W.2d 21 ("We have . . . end[ed] our practice of deferring to administrative agencies' conclusions of law.").

¶10 The specific issue before us also presents a question of law. "Whether an agency's action constitutes a 'rule' under Wis. Stat. § 227.01(13) presents a question of law, which we review de novo." Homeward Bound Servs., Inc. v. Office of Ins. Comm'r, 2006 WI App 208, ¶27, 296 Wis. 2d 481, 724 N.W.2d 380.

### III. ANALYSIS

¶11 Our opinion today addresses whether the Department may order Lamar to remove the Billboard because it temporarily exceeded its permitted size. The Department's position on the consequences of temporary violations of a "legal, nonconforming" sign's permit has morphed over the years. This is not necessarily problematic. It is to be expected that an administrative agency might, from time to time, change the manner in which it applies and enforces

6

our State's statutes and regulations. Sometimes a prudential reordering of priorities or other discretionary factors prompt the change. But sometimes the change arises from a reevaluation of what the agency believes a particular statute or regulation requires. This case implicates the latter circumstance and addresses whether it was necessary for the Department to promulgate a rule before implementing its new understanding of the applicable statute's requirements.

¶12 The Department says that when Lamar added the temporary extensions to the Billboard, the sign's status changed from "legal, nonconforming" to "illegal," thereby subjecting it to removal. And, more importantly, the Department says the change in status is irreversible——that is, the sign owner has no opportunity to "cure" the violation. A permit program supervisor who recently worked for the Department, Ms. Deborah Brucaya, explained the Department's current position. She said that "if the extension was placed on the sign after it became nonconforming and was later removed, [the Department's] interpretation [is] that the sign lost its nonconforming status" and "became illegal." According to the Department, this result necessarily follows from the terms of Wis. Stat. § 84.30(11), which say:

> Any sign erected in an adjacent area after March 18, 1972, in violation of this section or the rules promulgated under this section, may be removed by the department upon 60 days' prior notice by registered mail to the owner thereof and to the owner of the land on which said sign is located, <u>unless such sign is brought into conformance within said 60 days</u>. No notice shall be required to be given to the owner of a sign whose name is not stated on the sign or on the structure on which

7

> it is displayed, or whose address is not stated thereon or is not on file with the department.

§ 84.30(11) (emphasis added). Lamar cannot exercise this cure option, the Department says, because changed circumstances make it impossible to conform the Billboard to the law. It concludes that, because the redesignation of the adjacent highway means the property may no longer host signs like the Billboard, "conformance" actually requires the sign's removal.

¶13 Lamar says the Department's current understanding of Wis. Stat. § 84.30(11) represents a sharp break from its prior practice. Previously, it says, the Department granted the owner of a "legal, nonconforming" sign 60 days to cure whatever condition caused the sign to violate the permit. One of the Department's former permit program supervisors, Mr. Robert Hardie, confirmed that this is how the Department handled changes to signs like the Billboard. He said that "[i]f a sign was either permitted at a certain size or legal nonconforming at a certain size, if an extension went up, it would be considered illegal and have to be removed or taken back to where it was before." And if the owner removed the extension "within the 60-day period allotted, the remainder of the sign could continue unimpeded[.]" That is, the sign returned to the "legal, nonconforming" status it enjoyed before the violation. This practice, the supervisor said, was based on the Department's interpretation of § 84.30(11)——the same statute on which the Department relies for its current, but contradictory, position.

8

¶14 Lamar argues that the Department may not eliminate the opportunity to cure a violation until it first promulgates a rule to that effect using the Wis. Stat. Ch. 227 rulemaking procedure. The Department does not deny that its "no-cure" position differs from its prior practice, but says no rulemaking is necessary because it is simply correcting for a previously erroneous understanding of the law.

¶15 Our resolution of the parties' dispute begins with the proposition that every agency must "promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute." Wis. Stat. § 227.10(1). A rule is "a regulation, standard, statement of policy, or general order of general application that has the force of law and that is issued by an agency to implement, interpret, or make specific legislation enforced or administered by the agency or to govern the organization or procedure of the agency." Wis. Stat. § 227.01(13).

¶16 The Department tells us there are two reasons it did not need to adopt a rule to eliminate the cure option. First, it says, Wis. Stat. § 227.10(1) contains a provision allowing it to adopt a new statutory interpretation in contested cases or the resolution of particular matters. Second, it says its current position reflects the Department's application of the clear and unambiguous requirements of Wis. Stat. § 84.30(11), a circumstance we have previously indicated does not require rulemaking. Schoolway Transp. Co. v. DMV, 72 Wis. 2d 223, 240 N.W.2d 403 (1976).

A. Of Contested Cases and Particular Matters

9

¶17 In the same statute Lamar cited for the rulemaking mandate, the Department says it found an exemption applicable to circumstances like those at issue here. The relevant subsection says this:

> Each agency shall promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute. A statement of policy or an interpretation of a statute made in the decision of a contested case . . . or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts does not render it a rule or constitute specific adoption of a rule and is not required to be promulgated as a rule.

Wis. Stat. § 227.10(1). The Department concentrates on the second sentence, arguing that the Order represents the application of Wis. Stat. § 84.30(11) to a specific set of facts in the resolution of a particular matter. Therefore, it concludes, its new interpretation was not a "rule" within the meaning of this provision.

¶18 The Department's argument requires us to determine the meaning of a statute, specifically the second sentence of Wis. Stat. § 227.10(1). The process for doing so is well-known and "'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'" State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 (quoted source omitted). "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning." Id. (cited

10

source omitted). But sometimes a statute does not have a plain meaning. "[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses." Id., ¶47. We do not, however, look for ambiguity because "[s]tatutory interpretation involves the ascertainment of meaning, not a search for ambiguity." Id. (quoted source omitted); see also Daniel R. Suhr, Interpreting Wisconsin Statutes, 100 Marq. L. Rev. 969, 985 (2017) ("[T]he court must do its own independent work to determine whether a statute is ambiguous. It cannot take the easy road, throwing up its hands and declaring, 'the parties disagree,' or 'the lower courts disagree,' or even 'the dissenters disagree.'").

¶19 The Department did not extensively discuss its understanding of the meaning of the second sentence of Wis. Stat. § 227.10(1). Indeed, it gave us only a few sentences-worth of explanation to guide our application of its terms. The gist of the argument seems to be that the Department is free to adopt any reasonable statutory interpretation it wishes—sans rulemaking— so long as it does so in a contested case or disposition of a particular matter. Because the Department adopted its no-cure position in the process of ordering Lamar to remove the Billboard, it concludes that § 227.10(1) exempted it from promulgating a rule.

¶20 The Department's argument, however, requires that we read into Wis. Stat. § 227.10(1) two alternative pathways by which an agency may adopt a new interpretation of an ambiguous statute. The first pathway requires promulgation of a new rule, a requirement found in the first sentence of § 227.10(1) ("Each

11

agency shall promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute."). The Department says the second pathway, found in the second sentence of § 227.10(1), allows it to adopt a new interpretation of an ambiguous statute simply by announcing it in a contested case or in the resolution of a specific matter.

¶21  If the second pathway allowed the Department to change its interpretation of an ambiguous statute, it would place Wis. Stat. § 227.10(1) in unresolvable conflict with itself under such circumstances.  While the first sentence requires a rule for each statutory interpretation, the Department's position would allow it to regularly engage in ad hoc interpretations of ambiguous statutes.  According to the Department, it is of no consequence that, until a few years ago, it interpreted Wis. Stat. § 84.30(11) as allowing the owner of a "legal, nonconforming" sign to cure a violation, while today it interprets the same statue as foreclosing that opportunity.  And nothing in its explanation of the operation of § 227.10(1) would prevent it from returning to the original interpretation tomorrow.  Nor would it even preclude the Department from employing the "cure" interpretation with respect to one sign while simultaneously applying the contrary "no-cure" interpretation against another.

¶22 All of this would be consistent with Wis. Stat. § 227.10(1), according to the Department's rationale, but only if it surprises a sign-owner with the new interpretation of an

ambiguous statute.[8] That is, to escape the rulemaking mandate of the first sentence, it must wait for a contested case or some other resolution of a specific matter before announcing the new interpretation.[9] If it instead announced the interpretation prior to a contested case or resolution of a specific matter, presumably even the Department would agree it would need to engage in rulemaking.[10] The Department does not describe how, in the context of an ambiguous statute, its understanding of the second sentence of § 227.10(1) could possibly coexist with the first sentence's mandate that it engage in rulemaking when it adopts a new interpretation.

¶23 The plain meaning of Wis. Stat. § 227.10(1), the meaning that makes sense of both sentences, is that it describes only one pathway by which an agency can adopt a new interpretation of an ambiguous statute: The agency must adopt a rule. The second

---

[8] That appears to be what happened here. When asked if the Department had ordered other signs removed based on the no-cure policy, Ms. Brucaya testified that "this is the only instance that [she] was aware of where a sign removal order was issued on [this] basis."

[9] Wis. Stat. § 227.10(1) ("A statement of policy or an interpretation of a statute made in the decision of a contested case, in a private letter ruling under s. 73.035 or in an agency decision upon or disposition of a particular matter as applied to a specific set of facts does not render it a rule or constitute specific adoption of a rule and is not required to be promulgated as a rule.").

[10] Wis. Stat. § 227.10(1) ("Each agency shall promulgate as a rule each statement of general policy and each interpretation of a statute which it specifically adopts to govern its enforcement or administration of that statute.").

sentence, the one on which the Department relies, neither provides an alternative path by which to announce a new interpretation of an ambiguous statute, nor excuses the Department from the requirement imposed on it by the first sentence. It merely recognizes that, in resolving specific matters, agency decisions will often contain——but not create——a statement of policy, or interpretation of a statute as applied to the matter at hand, and that they need not adopt a new rule for each specific matter they resolve.[11] However, the second sentence does not say that an agency need not promulgate a rule embodying the new interpretation of an ambiguous statute before implementing it in a specific case. There is nothing in § 227.10(1) that authorizes the Department to adopt its "no-cure" interpretation through the simple expedient of ordering Lamar to remove the Billboard.

### B. Correcting Erroneous Statutory Applications

¶24 The Department also said it could implement its "no-cure" interpretation of Wis. Stat. § 84.30(11) without promulgating a new rule because it was simply conforming its practice to the statute's requirements. The Department's statement of the principle is correct——we have previously explained that when an agency corrects a previously erroneous application of a plain and unambiguous statute, it is not interpreting the statute, but merely conforming its practice to the law. Schoolway Transp. Co., 72 Wis. 2d at 228 ("When a statute

---

[11] We need not determine the significance or operation of the second sentence of Wis. Stat. § 227.10(1) in the context of an unambiguous statute, and so offer no opinion on that topic.

14

is plain and unambiguous, no interpretation is required[.]"); id. at 236 ("[T]he duty of the Department [is] to administer the statute according to its plain terms and to correct its error."). So when an agency brings its practice into conformity with the plain meaning of an unambiguous statute, "there is no requirement that the department comply with the filing procedures mandated in connection with promulgation of administrative rules[,]" even though the new statutory application contradicts its previous practice. Id.[12] But when an agency changes its interpretation of an ambiguous statute, it is engaging in rulemaking. Id. at 237 ("[W]hen the Department changed its interpretation of [Wis. Stat. §] 341.26(2)(h) [which the court had determined to be ambiguous], it was engaging in administrative rule making."). Under those circumstances, "[t]hose who are or will be affected generally by this interpretation should have the opportunity to be informed as to the manner in which the terms of the statute regulating their

---

[12] Schoolway Transp. Co. v. DMV, 72 Wis. 2d 223, 240 N.W.2d 403 (1976) should not be understood as giving agencies a mechanism for adopting new statutory interpretations without promulgating a new rule. The principle enunciated in that case arises from an agency's obligation to follow the law as enacted by the legislature—an obligation that supersedes any contrary interpretations it may have previously adopted. When an agency discovers its interpretation is out of step with plain and unambiguous statutory commands, it must conform itself to those commands as a matter of course. Only in such a circumstance may the agency change a prior interpretation without promulgating a new rule. Indeed, in such a circumstance the agency must immediately conform its interpretation to the statute's requirements. Id. at 229 ("In view of the clear statutory requirements, the Department was duty-bound to cease its prior practice of allowing dual registration.").

15

operations will be applied."  Id.  The agency informs those affected by the changed interpretation by promulgating a new rule. Id. ("This is accomplished by the issuance and filing procedures established by ss. 227.01(4) and 227.023(1).").[13]

¶25  Whether the Department needed to adopt its "no-cure" position as a rule, therefore, depends on whether Wis. Stat. § 84.30(11) unambiguously prevents the owner of a "legal, nonconforming" sign from recovering the sign's pre-existing status by curing the status-altering violation.  So our goal is to determine whether there is a clear and plain meaning of § 84.30(11) as it relates to this question.  Kalal, 271 Wis. 2d 633, ¶45.  We use the same process for doing so as we did in discovering the meaning of Wis. Stat. § 227.10(1), above.

¶26  The Department says there are two ways we could conclude that its "no-cure" interpretation is the natural and inevitable result of unambiguous statutory commands.  The first is that Wis. Stat. § 84.30(11)——the provision containing the right to cure—— does not apply at all to signs that were lawfully erected (like the Billboard).[14]  Alternatively, the Department says that if

---

[13] Wis. Stat. § 227.023(1), as cited in Schoolway Transp. Co., was repealed in 1986 and renumbered as Wis. Stat. § 227.20 in 1985 Wis. Act 182.

[14] This subsection says:

16

§ 84.30(11) <u>does</u> apply to signs like the Billboard, the cure option is available only to those who can conform their signs to the applicable laws as they apply to current circumstances. We will address each basis in turn.

### 1. Applicability of Wis. Stat. § 84.30(11) to "legal, nonconforming" signs

¶27 In the space of this one case, the Department has been of both minds with respect to whether Wis. Stat. § 84.30(11) applies to the Billboard. Its Order——the one requiring Lamar to remove the Billboard——says § 84.30(11) is the underlying source of the Department's statutory authority. <u>See</u> Order ("Under the authority provided in Wisconsin Statutes, [§] 84.30(11) and Wisconsin Administrative Code, [§] TRANS 201.09[15], you are hereby ordered to remove the above-described outdoor advertising sign within 60 days of the date of this notice."). But here, the

---

Any sign erected in an adjacent area after March 18, 1972, in violation of this section or the rules promulgated under this section, may be removed by the department upon 60 days' prior notice by registered mail to the owner thereof and to the owner of the land on which said sign is located, unless such sign is brought into conformance within said 60 days. No notice shall be required to be given to the owner of a sign whose name is not stated on the sign or on the structure on which it is displayed, or whose address is not stated thereon or is not on file with the department.

Wis. Stat. § 84.30(11).

[15] "Any sign erected after October 1, 1972, without a permit having been granted therefor, and any nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign." Wis. Admin. Code § Trans 201.09.

Department says § 84.30(11) does not apply to the Billboard because its provisions contemplate only signs that, when erected, were in violation of controlling law. It notes that the statute applies to "[a]ny sign <u>erected</u> in an adjacent area after March 18, 1972, <u>in violation</u> of this section or the rules promulgated under this section . . . ." § 84.30(11) (emphasis added). Because the Billboard complied with all applicable laws when it was built, the Department argues, it is outside the universe of signs subject to the terms of § 84.30(11). The Department says this latter position (that § 84.30(11) does <u>not</u> apply to the Billboard) means Lamar has no statutory source of authority for its claimed right to cure the status-altering modification.

¶28 The Department's conflicting positions with respect to whether Wis. Stat. § 84.30(11) applies to the Billboard suggests we need to decide which one is correct. But as it turns out, it hardly matters. If we agree with the position the Department took when it issued the Order (that § 84.30(11) <u>does</u> apply to the Billboard), our analysis would simply progress to the Department's alternative argument, to wit, determining what it means for a sign to have been "brought into conformance." But if we agree with the Department's current interpretation of § 84.30(11), the one it advanced here, then it wins the battle over the inapplicability of § 84.30(11) while losing the war over whether it was required to promulgate a new rule embodying its "no-cure" interpretation.

¶29 This is necessarily so because, as the parties agree, we are addressing this part of the Department's argument under the <u>Schoolway Transp. Co.</u> rubric, which excuses the rulemaking

18

requirement only if the no-cure interpretation is consistent with plain and unambiguous statutory commands.[16] But if the Department's current position is correct, that Wis. Stat. § 84.30(11) does not apply to the Billboard, then it must follow that this statute cannot command the Department to adopt a no-cure policy with respect to such signs. That is to say, a statute that does not apply to the subject under consideration is entirely incapable of plainly and unambiguously commanding the Department to adopt a specific policy with respect to that subject. So if the Department wishes to rely on the Schoolway Transp. Co. rubric, it must look elsewhere for a plain and unambiguous statutory command. It has not done so.

¶30 Instead, because the Department could point to no statute (other than Wis. Stat. § 84.30(11)) requiring adoption of its no-cure policy, it referred us to Wis. Admin. Code §§ Trans 201.09 and 201.10 as the operative authorities.[17] The first of

---

[16] This also means we have no need to disambiguate the statute to reach our conclusion. Under the Schoolway Transp. Co. rubric, we have a binary decision before us: Is the statute, or is it not, clear and unambiguous? The answer dictates how the remainder of the analysis proceeds. But no part of that analysis requires us to resolve ambiguities, and we express no opinion on which of the interpretations of Wis. Stat. § 84.30(11) is correct.

[17] We determine the meaning of a rule in the same way we determine the meaning of a statute. "These rules of interpretation apply with equal force to administrative regulations: 'When interpreting administrative regulations the court uses the same rules of interpretation as it applies to statutes.'" Kieninger v. Crown Equip. Corp., 2019 WI 27, ¶14 n.6, 386 Wis. 2d 1, 924 N.W.2d 172 (quoting United Food and Commercial Workers Union Local 1473 v. Hormel Foods Corp., 2016 WI 13, ¶30, 367 Wis. 2d 131, 876 N.W.2d 99).

these provisions says that "[a]ny sign erected after October 1, 1972, without a permit having been granted therefor, and any nonconforming sign which subsequently violates s. 84.30, Stats., or these rules, shall be subject to removal as an illegal sign." § Trans 201.09. The second provision says that "[i]n order to lawfully maintain and continue a nonconforming sign . . . the following conditions apply . . . [t]he sign must have been lawful on the effective date of the state law and must continue to be lawfully maintained." § Trans 201.10(2)(d). These are, of course, rules. And rules cannot function in the Schoolway Transp. Co. rubric inasmuch as it is nonsensical to say that an agency need not promulgate a rule to change a prior practice so long as it has promulgated a rule adopting the new practice.

¶31 So the Department's reliance on Wis. Admin. Code §§ Trans 201.09 and 201.10 boils down to a simple matter of determining whether the rules adopted the Department's "no-cure" policy. They did not. No one disputes that when a "legal, nonconforming" sign (such as the Billboard) violates Wis. Stat. § 84.30 it becomes illegal and subject to removal. But the Department's argument depends on the rule precluding Lamar from curing the status-altering violation. And § Trans 201.09 is completely silent on that subject. Similarly, § Trans 201.10 requires a nonconforming sign to be lawfully maintained, upon pain of losing its status. But it says nothing about whether curing a status-altering violation can recapture the sign's previous status. Finally, not even the Department thought these rules said anything about the right to cure——until, that is, it issued the

20

Order.  These rules have existed in their current form since 1976,[18] a span of time that encompasses the era in which the Department's interpretation of § 84.30(11) allowed owners of "legal, nonconforming" signs to cure status-altering violations.  It was not until 2012 (when the Department ordered Lamar to remove the Billboard) that it suddenly discovered that these rules required it to adopt its current no-cure interpretation.  So while these rules remained as a fixed point of reference, the Department's understanding of what they require fluctuated.  The Department did not explain how the rules' unchanging text could engender changing interpretations.  For that reason, and because nothing in the text of § Trans 201.09 or § Trans 201.10 suggests a no-cure policy, these provisions do not answer the question before us.

¶32  In sum, the Department's argument that its adoption of the no-cure policy falls within the Schoolway Transp. Co. rulemaking exemption because Wis. Stat. § 84.30(11) does not apply to the Billboard must fail inasmuch as it identified no plain and unambiguous statutory command necessitating that policy.  The most this argument could have accomplished was the undoing of Lamar's position that it has a statutory right to cure violations.  But eliminating support for Lamar's argument is not the same as identifying an unambiguous statutory command requiring the Department's new policy.  Further, the Department may not rely on Wis. Admin. Code §§ Trans 201.09 or 201.10 as a substitute for a

---

[18] The rules were renumbered from Wis. Admin. Code §§ Hy 19.09 and 19.10 to Wis. Admin. Code §§ 201.09 and 201.10, respectively, in 1980.

21

plain and unambiguous statute in the <u>Schoolway Transp. Co.</u> rubric. Finally, nothing in those rules indicates the Department had adopted a no-cure policy prior to issuance of the Order. Therefore, we will proceed to the Department's alternative argument, to wit, that § 84.30(11) <u>does</u> apply to the Billboard, and that it unambiguously precludes Lamar from curing the Billboard's status-altering violation.

### 2. The meaning of "conformance"

¶33 The Department argues that, even if Wis. Stat. § 84.30(11) applies to the Billboard, the statute's terms make the cure option unavailable to owners of "legal, nonconforming" signs. So, it concludes, it could adopt its no-cure interpretation without a rule (under the <u>Schoolway Transp. Co.</u> rubric) because it was just aligning itself with the statute's plain and unambiguous requirements. The provision on which it relies says:

> Any sign erected in an adjacent area after March 18, 1972, in violation of this section or the rules promulgated under this section, may be removed by the department upon 60 days' prior notice by registered mail to the owner thereof and to the owner of the land on which said sign is located, unless such sign is brought into conformance within said 60 days.

§ 84.30(11). Specifically, the Department directs us to the phrase "unless such sign is brought into conformance within said 60 days." <u>Id.</u> Lamar cannot bring the Billboard "into conformance," according to the Department, because current law prohibits the erection or maintenance of signs like the Billboard in that location. Indeed, the Department says that "conformance" under these circumstances actually requires Lamar to remove the Billboard.

22

¶34 Whether the Department is correct depends on what the Billboard must be "in conformance" with. Unfortunately, Wis. Stat. § 84.30(11) does not provide an immediately obvious answer. We can readily determine that the conformity requirement refers to the phrase "this section or the rules promulgated under this section," which appears in the first clause of the subsection. Id. But circumstances have changed, and the way the statutory section and rules apply to the Billboard is different now. When the permit issued, the Billboard was in conformance because it was located in a business area. But once the adjacent portion of U.S. Highway 51 became Interstate 39, the lot on which the Billboard resides lost its status as a business area. So after the redesignation, the Billboard obtained something of a hybrid status——it was legal because it was in conformance with the laws as they applied when the permit issued, but it was not in conformance with the same laws as they applied after the redesignation. Lamar says that, with respect to such signs, "conformance" in § 84.30(11) refers to the first part of the sign's hybrid status, meaning that if the Billboard can be brought "into conformance" with the laws as they applied when the permit issued, then it has the right to cure the violation. The Department, on the other hand, says "conformance" refers to the second part of the Billboard's hybrid status, meaning that there can be no right to cure unless the Billboard can be made to comply with the laws as they apply today.

¶35 The Billboard obviously cannot comply with the laws as they apply to today's circumstances. The property on which the

23

Billboard is located no longer qualifies as a "business area," and there is nothing Lamar can do to remedy that infirmity. But the Billboard <u>can</u> comply with the laws as they applied when the permit issued. Therefore, we need to know which part of the Billboard's hybrid status the "conformance" language of Wis. Stat. § 84.30(11) implicates. Under the <u>Schoolway Transp. Co.</u> rubric, the Department would not have needed to promulgate a rule only if the statute plainly and unambiguously applies to the latter part of the Billboard's hybrid status.

¶36  The language of Wis. Stat. § 84.30(11) does not provide any obvious clues as to which part of the Billboard's status it implicates, and so we must go beyond <u>Kalal</u>'s first step in determining the statute's meaning. <u>Kalal</u>, 271 Wis. 2d 633, ¶45 ("[W]e have repeatedly held that statutory interpretation 'begins with the language of the statute. If the meaning of the statute is plain, we ordinarily stop the inquiry.'") (quoted source omitted). The next step in a plain meaning analysis is looking to the statute's scope, context, structure, and purpose to see if they provide any helpful direction.[19]

---

[19] We have previously recognized the following aids in determining a statute's meaning:

¶37  The Department says its new interpretation of Wis. Stat. § 84.30(11) furthers the general policy objective of eliminating nonconforming signs.  It points to § 84.30(5)(b), which says that "[a] sign lawfully erected after March 18, 1972 and which subsequently does not conform to this section shall be removed by the end of the 5th year after it becomes nonconforming."[20]  That, however, is only part of the general policy——the other part requires payment of just compensation for the removal of such signs:

> The department shall pay just compensation upon the removal or relocation on or after March 18, 1972, of any of the following signs which are not then in conformity with this section, regardless of whether the sign was removed because of this section:

---

> Context is important to meaning. So, too, is the structure of the statute in which the operative language appears. Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results . . . . [S]cope, context, and purpose are perfectly relevant to a plain-meaning interpretation of an unambiguous statute as long as the scope, context, and purpose are ascertainable from the text and structure of the statute itself, rather than extrinsic sources, such as legislative history.

State ex rel. Kalal v. Circuit Court for Dane Cty., 2004 WI 58, ¶¶46, 48, 271 Wis. 2d 633, 681 N.W.2d 110 (citations omitted).

[20] See also State ex rel. Peterson v. Burt, 42 Wis. 2d 284, 291, 166 N.W.2d 207 (1969) ("'The spirit of zoning is to restrict rather than increase a non-conforming use and to eliminate such uses as speedily as possible.'") (quoted source omitted).

. . . .

> (b) Signs lawfully in existence on land adjoining any highway made an interstate or primary highway after March 18, 1972.

§ 84.30(6). So § 84.30(11) operates in the context of a policy favoring the expeditious removal of nonconforming signs with compensation. But there is no such policy with respect to uncompensated removal of nonconforming signs. In fact, as far as the statutes are concerned, unless and until the Department pays just compensation, the law allows a "legal, nonconforming" sign to exist indefinitely.[21] Consequently, Wisconsin's policy with respect to the maintenance of non-conforming signs provides no guidance on whether a status-altering violation results in permanent illegality as opposed to only a temporary illegality that can be remedied by curing the violation.

---

[21] We recognize that the court of appeals has previously said that, in the context of a zoning dispute, a status-altering violation of a "legal, nonconforming" use cannot be remedied, which furthers the elimination of such uses. See Waukesha Cty. v. Pewaukee Marina, Inc., 187 Wis. 2d 18, 31, 522 N.W.2d 536 (Ct. App. 1994) ("The violation of the nonconforming use by expansion or enlargement which changes the use invalidates the legal nonconforming use as well as the illegal change."); Peterson, 42 Wis. 2d at 291 ("'The spirit of zoning is to restrict rather than increase a non-conforming use and to eliminate such uses as speedily as possible.'") (quoted source omitted).

But this is not particularly instructive here because we are doing a plain meaning analysis of one part of Wisconsin's sign control laws to determine if it unambiguously prevents an owner from curing a status-altering violation. Although Peterson and Pewaukee Marina, Inc. may be indicative of a general approach to nonconforming uses, they do not instruct us on whether the plain meaning of Wis. Stat. § 84.30(11) requires the Department's current interpretation.

¶38 We conclude that the "language [of Wis. Stat. § 84.30(11)] reasonably gives rise to different meanings" with respect to whether it prevents the owner of a "legal, non-conforming" sign from curing a status-altering violation. Kalal, 271 Wis. 2d 633, ¶47. Specifically, the phrase "brought into conformance" could mean that the Billboard must conform to the laws either: (a) as they applied to the circumstances when the permit issued (the "legal" part of the sign's hybrid status); or (b) as they apply to current circumstances (the "nonconforming" part of the hybrid status). According to our canons of statutory construction, that makes it ambiguous. Id. ("[A] statute is ambiguous if it is capable of being understood by reasonably well-informed persons in two or more senses.") (citations omitted). Therefore, because § 84.30(11) does not plainly and unambiguously require the Department's no-cure interpretation, Schoolway Transp. Co. does not provide an exemption from the rulemaking requirement.

* * *

¶39 We conclude it was necessary for the Department to have promulgated its no-cure interpretation as a rule, pursuant to Wis. Stat. § 227.10(1), before applying it in this matter. And should the Department promulgate this interpretation as a rule, it may not apply it retroactively to cured violations that existed before the rule was created. "A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required." FCC v. Fox Television Stations, Inc., 567 U.S. 239, 253 (2012); id. ("[R]egulated parties should know what is required of them so they

27

may act accordingly."). It is axiomatic that a new rule cannot reach back into history to give a sign owner notice of a requirement the Department has not yet adopted.

¶40 Our statutes tell us we must "set aside or modify the agency action if [the court] finds that the agency has erroneously interpreted a provision of law and a correct interpretation compels a particular action, or [the court] shall remand the case to the agency for further action under a correct interpretation of the provision of law." Wis. Stat. § 227.57(5). The Department erroneously interpreted Wis. Stat. § 227.10(1) as allowing it to implement its no-cure interpretation without first promulgating it as a rule. And because the no-cure interpretation was the Department's operative justification for denying the Application and issuing the Order, those administrative actions are erroneous and must be vacated. Schoolway Transp. Co., 72 Wis. 2d at 237 ("Since this change [in statutory interpretation] constituted promulgation of an administrative rule, failure to so file renders the rule invalid . . . ."). Consequently, to the extent Lamar has cured the status-altering modification to the Billboard pursuant to the Department's then-existing "cure" policy, it is once again a "legal, nonconforming" sign.

¶41 Lamar raised other issues for our review,[22] but because we conclude that Wis. Stat. § 227.10(1) required the Department to engage in formal rulemaking when it adopted its no-cure interpretation of Wis. Stat. § 84.30(11), we need not address them now. The failure to engage in rulemaking is dispositive. See Gross v. Hoffman, 227 Wis. 296, 300, 277 N.W. 663 (1938) ("As one sufficient ground for support of the judgment has been declared, there is no need to discuss the others urged."); see also Barrows v. Am. Family Ins. Co., 2014 WI App 11, ¶9, 352 Wis. 2d 436, 842 N.W.2d 508 ("An appellate court need not address every issue raised by the parties when one issue is dispositive.").

## IV. CONCLUSION

¶42 We reverse the court of appeals and remand this matter to the circuit court for entry of judgment setting aside the Order and remanding the matter to the Department for further proceedings on the Application not inconsistent with this opinion.

*By the Court.*—The decision of the court of appeals is reversed and the cause is remanded to the circuit court.

---

[22] Lamar raised four additional issues unrelated to rulemaking: (1) whether the DHA erred in finding that Wis. Stat. § 84.30 and Wisconsin Administrative Code Trans. § 201.10 prohibit the enlargement of nonconforming, off-premise signs erected after March 18, 1972; (2) whether the DHA misinterpreted and misapplied common law authorities relating to nonconforming uses; (3) whether the DHA erred as a matter of law by finding that the right to cure provision in § 84.30(11) does not apply to Lamar's sign; and (4) whether § 84.30(5)(br)(4) applies to this sign.